I would like to focus on the 8th Amendment issue. The 8th Amendment claim here is really very straightforward. My mentally retarded client is serving a life sentence and is likely to die in prison because he basically committed a non-violent regulatory crime of remission. Much of the debate in this case, on this issue, has centered around the application of the first prong of the solemn analysis. Well, people haven't been real successful on these 8th Amendment claims, on the 25 to life sentences. And I would say that the most unfortunate part for your client is that his predicate offense is really bad. That is true. I mean, it's not like, you know, he doesn't have the stealing the loaf of bread situation. Well, his predicate offense was 30 years ago and he has served time in prison for it. He hasn't done any sexual or violent offense in 30 years. So even this offense is different from a minor crime, right? Well, I would respectfully disagree. I think it's a regulatory crime of remission. He didn't kill anybody. He didn't hit anybody. It's not a sexual crime in any way. He didn't register. Do we know exactly what the jury found he did? As I understand it, it went to the jury on two theories. One was that he didn't give notice of his change of address. Correct. The other theory was that his birthday came and went and he didn't confirm his address. Correct. We don't know which one they found him guilty of. We do not. If it is the latter, if he let his birthday come and go and he didn't update his address, didn't confirm his existing address, don't we have a case that says that it's disproportionate? Correct. Gonzalez is a case that said that at least if you can call those the birthday registration cases, those are considered, the court has considered that to be the most technical violation. If he were found guilty, if there had been some kind of special verdict, if they had found that he hadn't, that he had moved and didn't give notice of his change of address, that would be a more serious crime as I understand the cases, right? Well, I think that it would be a more serious crime, correct? I would still say that it's not enough to give him 25 to life, but I would agree that the courts have said at least that it is more serious than just not updating your annual registration. What do we do about the fact that we don't know which one they found him guilty of? Well, I think first of all, I think it takes it out of Crosby, Warshaw, Schwartz. You can't just say it's exactly like that case because it's not for that reason. Number two, I think it gives the court an opportunity to look at the entire picture of the circumstance of the crime to see, number one, what my client's moral culpability for it was, and number two, what societal harm did it cause? At least the court is at least able to do that rather than simply dispose of it by saying, well, you know, it's a, you know, he didn't, you know, he didn't notify of a new residence, case closed. I don't know, does that answer your question? Well, I'm saying if we can't tell which one it is, does your guy automatically win? Well, I think he wins, my position is I think he wins regardless. Okay. If we say one is serious, one is not serious, one is regulatory, we can't tell which is which, then what happens? That's a good question. Your guy wins. I mean, as I understand your position. Right. Right. Well, but, you know, that, if the court takes that position, yes, but I think the backup position would be that either way he should win because either type of crime should not be considered so severe that it deserves a life sentence. Is he capable of being paroled? Well, he's, he first comes up for parole, but at the time he's 67. Well, I understand that, but he's capable of being paroled, right? Right. He sentences 25 to life, meaning he comes up for parole first after he serves 25 years. Well, what about Gonzalez? What about Crosby? Meaning? Meaning, is that a difference? Well, I think in both of those cases, the sentences were of similar nature. They were 25 to life or 27 to life. So in both of those cases, defendants did have, you know, parole legibility after 25 or 27 years. But I don't think that that changes anything. Let's say, just for the sake of argument, that we hold that he can't get the three-strike sentence because we can't tell whether he did the regulatory one or the more serious one. Right. What would his sentencing exposure be if we sent it back for resentencing? Well, my understanding is that if he were to be sentenced as a second striker, he gets eight years. Because his maximum for a registration violation is three years, times two, plus the two years for prison priors. So if I recall correctly, it's eight years. So if he hits a home run today, he would go from 25 to life down to eight years? Well, I believe so. Okay. Right. Because of course we have to strike the search, you know. You have to get him down to two strikes and then it's eight years. Correct. How many years does he have on the sentence already? Has he served? Well, he started, he was sentenced in 2000, I believe. So I think he has more than eight years in already. So he'd get out, basically. I believe so. You know, I don't, yeah, I mean, you know, I'm not sure what his current situation is, but I would think at this point he should be done. Do you want to save some time? Yes, sir. Thank you very much. Good morning. Good morning. Jill Thayer, on behalf of the respondent. Since we're just talking about the cruel and unusual part, I would just like to say that under this case, the facts, and the court can look at the facts, and the state court looked at the facts. And the question is whether the state court's application was objectively and reasonable. Am I correct that we can't tell whether the jury found him guilty of not updating on his birthday versus not giving a change of address when he moved? Yeah, the jury finding isn't, what the jury found isn't clear, but this court can still look at the background. And that's what the courts have done. You can look at the entire situation. This is kind of a... The whole situation, he, as I understand it, the prosecutor specifically told the jury, you can find him guilty of this offense by either he didn't go on his birthday to update it, or he moved. That's correct. But under the facts of the case, his last registration was in Oakland at his mother's house. And he was arrested at the... At a shelter. So there's kind of a question whether or not he moved or was just temporarily staying at the shelter. So the jury could very easily have said, why worry about whether he moved, we'll just find him guilty of not updating on his birthday. But he was in a different place. He had been in a... Somewhere, I know. But I mean, the question is whether he moved or was just staying temporarily at a shelter. My point is this. If we can't tell what the jury found, and since we have a case that says if they found that he just did the not the birthday thing, shouldn't we say that this was disproportionate under the Gonzales case? Well, it's not objectively unreasonable. I mean, that's the problem. It's a high hurdle. What do you understand the holding of Gonzales to be? Well, in Gonzales, I understand that he was at the same place. He was easily locatable. It was a no birthday case. It was a birthday case, exactly. And our court held that it's grossly disproportional to sentence somebody to 25 to life for that. He actually got 28 years to life in that. And he had registered before and he registered after. And it was only like three months or something from the time. I think that when you're looking at cruel and unusual, all of the circumstances come out. In other words, you also look at the person's past. Okay? And in this situation, the past was very bad. And also, I know the last terrible offense was in 1983, but he was also in prison. He only served 11 years for that, for those offenses, actually. And then he violated parole several times. And then this crime, I mean, he had to register in 99 and then 2000 is when he got arrested. So you don't get a lot of credit for staying out of trouble when you're in prison the whole time is the argument. So all of the circumstances come into play. In other words, you can't just look at the crime itself. You need to look at the background, too. Well, frankly, it seems to me we have three different things that we have to look at. The gravity of the offense, of course. The sentences imposed on other criminals, which is why I asked the counsel what I did about the Gonzales and the Crosby case. And then the sentences imposed for commission of the crime in other jurisdictions. It seems to me that if I look at the third, sentences imposed for commission of the crime in other jurisdictions, I don't know whether it would be reasonable to say that the state court applied the Supreme Court precedent. So I go back to the first two. The gravity of the offense, the harshness of the penalty, and the sentences imposed on other criminals. That's what I do, don't I? With respect, no. Actually, this court doesn't go to that three-part analysis until it decides that it's grossly disproportionate. That was Kennedy's concurrence, and that concurrence has been accepted since then. So we don't go to the comparing other crimes until this court decides that it was objectively unreasonable for the state court to find that it wasn't cruel and unusual. Well, if there are two theories here, and we don't know which theory he was convicted under, does that inference go in your favor, or does it go in his favor? I think it goes in my favor, because it has to be objectively unreasonable. Is it objectively unreasonable for the state court not to consider the possibility, the fact that he was not in Oakland, and no longer in Oakland? And he said he wasn't living in Oakland. When he was arrested, he knew he wasn't living in Oakland, and he said he didn't have his registration card, but he did. And then he said he was only there for a couple of months, but he was actually there a lot longer, according to the records. So he knew he wasn't living in Oakland, and he admitted he wasn't living in Oakland. That's not objectively unreasonable for the state court to say, you know, under these facts, he was not living in Oakland. He wasn't relocatable. So would the inference be different if this were a direct appeal than an EDPA situation? Yes. Then this court, it's all de novo in this. But even in this situation, it seems to me, given Solem v. Helm, that we have to think about the reviewing factors. We give substantial difference to the state court, but we have to look at what the factors are the state court would have looked at, right? And see if they're just out to lunch, or if there can be reasonable application of the precedent? Right. Whether it was objectively unreasonable. And you can look at Solem, and you can look at Andrade, and all of the other precedent. All I was trying to do is get you to comment about, it doesn't seem to me that one could really suggest that the state court was reasonable in its application if you only look at the third factor. But if you look at the first two factors, I was trying to say, what do you have to say about that? The first two factors of Solem? Right. Okay. Well, I think you can look at his history. And I think, you know, what I thought was kind of interesting in this case is, of course, now, you know, his crime, if he had two strikes and then committed the crime he committed in 1983 at this point, there'd be no question. There'd be no question at all that that was allowed. That a 25-year-to-life or more sentence would be allowed. I think the court can consider that, too. The California Court of Appeal had its decision when? What year was that? Well, the final one, it went on and on. 2006, was it? Yes. June 28, 2006. June 28, 2006. And our Gonzales case that deals with the not updating on your birthday came in 2008. Did you touch any significance to that? You didn't have the benefit of our Gonzales case. Correct. Correct. Well, the state would know that what the state needs to comply with is clearly established Supreme Court precedent. But that is correct that we didn't have that. Only at the time that it decided it or if something happened after? At the time of the decision. And actually, just recently, we discovered at the time the California Court of Appeal, the last reason state court opinion, so it would be the Court of Appeal decision. And so that would be, it would be relevant that we didn't have the benefit of Gonzales in the crime of omission. But of course, in Gonzales, the state court didn't have the benefit of this court's decision, too. I'm confused. It seems to me that that's to your benefit. Yes, it is. So sometimes when you're getting a softball, you seem like you're, it's a swing and miss here. I'm sorry, Your Honor. We're very particular about following Supreme Court precedent. Right, but it's at the time that, but we're looking at what the last reason court of appeal decision was and whether they misapplied any clearly established Supreme Court precedent at that time. And his best argument is Gonzales, and Gonzales was in 2008. That's right. So he doesn't get the benefit of it if I were making your argument. Is that right? Yes, he doesn't get the benefit of Gonzales. That's correct. He's not ready to go there. Okay, thank you. Thank you very much. I have a couple of points. Can you respond to that? Yeah, I will say. That the, on that? Well, I. Is this a harder ball coming at you? Well, I think the clearly established Supreme Court law is solemn versus held. That has been around for years. You know, the circuit precedent is relevant to eliminate how you apply clearly established law, but the state does not need the benefit of Gonzales to objectively reasonably apply solemn. In fact, you know, in many cases, the state vehemently argues that it doesn't care about circuit precedent. So, you know, it's interesting in this case, the argument is, well, we didn't have the benefit of Gonzales. Yeah, I think the Supreme Court's decision that deals with what code established law applies is green versus fissure, and it has to be the Supreme Court authority that has to bid the time of the state court decision. What about Ms. Dare's point that we can look beyond the verdict, which is a general verdict? We can look to see what the facts were to try to discern what. Well, Your Honor, frankly, I have two responses to that. Number one, I have no problem as a court looking beyond the verdict, but I think the facts show that my client was no more culpable than Mr. Gonzales, for example, and in some ways less culpable. Well, if your guy moved from Oakland to this shelter and didn't change his address, then he's in a different situation than Gonzales, isn't he? Well, we don't know whether he moved or not. Right. If he did that, the jury could have found that. Well, I think he's in a slightly different situation than Gonzales because Gonzales was beyond dispute in an annual update case. You're fighting my facts. If the jury found that he moved from Oakland to the shelter and didn't change his address, he's not like Gonzales. He's not exactly like Gonzales, correct. Right. But again, I would go back to what Your Honor said earlier, that I think the jury could have reasonably found that my client didn't understand that the shelter is something that he needs to register as a resident, but they may have found, well, you know, he knows, he may have understood when his birthday is and he needs to update that. And in fact, at one point, the prosecutor told the jury, you know, even if you're unsure as to whether or not, you know, he understood that this is a resident, you can find that he didn't update his annual registration. So the prosecutor herself gave the jury that way out in the case. So if you want to try to determine what the, you know, what the likely theory of the verdict was, I think you can look at that. But aren't you in a worse position under AEDPA review in determining what that verdict did than on direct appeal? Well, I'm not sure that I am, Your Honor, because AEDPA applies to the reasons given by the State Court of Appeal. In this case, if you look at the State Court decision, it says nothing about the verdict. It just doesn't mention it. This is a completely new issue. You know, you give deference to the reasons given by the California Court of Appeal. And if they come to the right decision for the wrong reason or no reason, we're still stuck with it, aren't we? Well, after you deal with the AEDPA deference, if you, let's say, you find that they were not, that the reasons they gave were objectively unreasonable, you still have to determine whether or not a constitutional violation occurred, but you no longer have to give deference. What do we do with the fact that he registers in each year and in some paperwork he registered as a transient? What you do with this is you look at the fact that when he did that, he was on parole, and he also had a girlfriend who, there was testimony that she was helping him organize his schedule and trying to help him keep his appointments. But when he failed to register, he was off parole supervision. So he was basically out of his zone. So I think that's the difference. Once he got off parole, he just wasn't, he wasn't able to do it. And I see I have one second left. Not anymore. Okay, thanks. Thank you very much. Ms. Thera, thank you, too. The case just argued is submitted.
judges: Silverman, Callahan, Smith